Samuel R. Randall (No. 024517)
**RANDALL LAW PLLC**
4742 North 24th Street, Suite 300
Phoenix, Arizona 85016
Telephone: 602.328.0262
Facsimile: 602.926.1479
Email: srandall@randallslaw.com

Michael A. Josephson (*pro hac vice forthcoming*)
Andrew W. Dunlap (*pro hac vice forthcoming*)
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Telephone: 713.352.1100
Facsimile: 713.352.3300
Emails: mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch (*pro hac vice forthcoming*)
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Telephone: 713.877.8788
Email: rburch@brucknerburch.com

**ATTORNEYS FOR GONZALES AND THE HOURLY EMPLOYEES**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**
**TUCSON DIVISION**

| | |
|---|---|
| Andrew Gonzales, Individually and for Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>Asarco LLC, a Delaware corporation,<br><br>Defendant. | **Case No. ________________**<br><br>**COLLECTIVE ACTION COMPLAINT FOR DAMAGES**<br><br>**(1) Failure to Pay Overtime Wages (Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*).**<br><br>**(Jury Trial Demanded)** |

# COLLECTIVE ACTION COMPLAINT

## SUMMARY

1. Andrew Gonzales (Gonzales) brings this collective action to recover unpaid wages and other damages from Asarco LLC (Asarco).

2. Asarco employed Gonzales as one of its Hourly Employees (defined below) in Arizona.

3. Gonzales and the other Hourly Employees regularly work more than 40 hours in a week.

4. But Asarco does not pay them for all their hours worked, including overtime hours.

5. Rather, Asarco requires Gonzales and the other Hourly Employees to prepare and put on necessary safety gear and participate in meetings, while on Asarco's premises, "off the clock" (Asarco's "off the clock policy").

6. Asarco does not pay Gonzales and the other Hourly Employees for this time spent donning safety gear and participating in meetings.

7. Additionally, Asarco rounds Gonzales's and the other Hourly Employees' hours to reflect only their prescheduled shifts, even when they work more, for its own primary benefit (Asarco's "rounding policy").

8. Finally, Asarco does not pay Gonzales and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for hours worked in excess of 40 in a week.

9. Instead, Asarco pays Gonzales and the other Hourly Employees non-discretionary bonuses that it excludes from their regular rates of pay for overtime purposes (Asarco's "bonus pay scheme").

10. Asarco's off the clock policy, rounding policy, and bonus pay scheme violate the Fair Labor Standards Act (FLSA) by failing to compensate Gonzales and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek.

## JURISDICTION & VENUE

11. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

12. This Court has general personal jurisdiction over Asarco because it maintains its principal place of business in Arizona.

13. Venue is proper because Asarco maintains its principal place of business in Pima County, Arizona, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

## PARTIES

14. Asarco employed Gonzales as a heavy equipment operator 2 from approximately January 2020 through July 2024.

15. Throughout his employment, Asarco subjected Gonzales to its off the clock policy, rounding policy, and bonus pay scheme.

16. Gonzales's written consent is attached as **Exhibit 1**.

17. Gonzales brings this collective action on behalf of himself and similarly situated Asarco employees.

18. The putative FLSA collective is defined as:

> **All hourly Asarco employees who worked during the last three years through final resolution of this action (the "Hourly Employees").**

19. Asarco is a Delaware limited liability company headquartered in Sahuarita, Arizona.

20. Asarco may be served with process through its registered agent: C T Corporation System, 3800 N. Central Ave., Suite 460, Phoenix, Arizona 85012.

**FLSA COVERAGE**

21. At all relevant times, Asarco was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

22. At all relevant times, Asarco was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

23. At all relevant times, Asarco was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, computers, and personal protective equipment—that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

24. At all relevant times, Asarco had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

25. At all relevant times, Gonzales and the other Hourly Employees were Asarco's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

26. At all relevant times, Gonzales and the other Hourly Employees were engaged in commerce or in the production of goods for commerce.

## FACTS

27. Asarco "is an integrated copper mining, smelting and refining company with approximately 1,700 employees" and maintains operations in Arizona and Texas.[1]

28. To meet its business objectives, Asarco employs workers, including Gonzales and the other Hourly Employees, to extract and process copper.

29. For example, Asarco employed Gonzales as a heavy equipment operator 2 from approximately January 2020 through July 2024 in its Arizona mines.

30. Gonzales's job duties included loading and driving haul trucks to transport copper and other materials throughout the mine and dump the material in the designated sites.

31. Gonzales's job duties likewise included putting on safety gear and participating in safety and production meetings, on Asarco's premises, before his scheduled shifts.

32. Throughout his employment, Gonzales recorded his "on the clock" hours through the timekeeping system Asarco selected and controlled.

33. Thus, Asarco's employment records reflect Gonzales's "on the clock" hours each week.

34. Throughout his employment, Gonzales regularly worked more than 40 hours in a workweek.

35. Gonzales typically worked approximately 12 hours a day and 5 or 6 days a week (60 to 72 hours a workweek).

---

[1] https://www.asarco.com/purpose/ (last visited December 2, 2025).

36. For example, Gonzales worked in excess of 40 hours a week during the first and second week of November 2023.

37. But throughout his employment, Asarco did not pay Gonzales for all hours worked.

38. Instead, Asarco subjected Gonzales to its off the clock policy.

39. Specifically, Asarco required Gonzales to prepare and put on safety gear (including hard hat, reflective gear, ear protection, metatarsal boots, safety glasses, gloves, dust mask, respirator), fundamentally necessary to performing his job duties as a heavy equipment operator and attend safety and production meetings, on Asarco's premises, "off the clock," and without compensation.

40. This took Gonzales approximately 30 to 40 minutes each workday.

41. Gonzales could not perform his principal job duties in accordance with Asarco's policies, procedures, and expectations without donning this safety gear and participating in required meetings.

42. Indeed, much of the gear Gonzales utilized is mandated by federal regulation. *See* 29 C.F.R. § 1910.132; 30 C.F.R. § 56, *et seq*.

43. The donning of safety gear and meeting participation are therefore integral and indispensable work duties for Gonzales.

44. But under its off the clock policy, Asarco did not compensate him for the same.

45. Thus, because of its off the clock policy, Asarco failed to pay Gonzales overtime wages for all his overtime hours worked during workweeks he worked more than 40 hours.

46. Gonzales and the other Hourly Employees perform their jobs under Asarco's supervision and use materials, equipment, and technology Asarco approves and supplies.

47. Asarco requires Gonzales and the other Hourly Employees to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.

48. Gonzales's and the other Hourly Employees' work must strictly adhere to the uniform standards put in place by Asarco.

49. At the end of each pay period, Gonzales and the other Hourly Employees receive wages from Asarco that are determined by common systems and methods that Asarco selects and controls.

50. Like Gonzales, the other Hourly Employees typically work approximately 12 hours a day and 5 to 6 days a week (60 to 72 hours a workweek).

51. But, as with Gonzales, Asarco fails to pay the other Hourly Employees for all their hours worked.

52. Asarco subjects the other Hourly Employees to the same or similar off the clock policy it imposed on Gonzales.

53. Specifically, Asarco requires them to prepare and put on safety gear (including hard hat, reflective gear, ear protection, metatarsal boots, safety glasses, gloves, dust masks, respirators) fundamentally necessary to performing their jobs and participate in production and safety meetings, while on Asarco's premises, "off the clock," and without compensation.

54. Like Gonzales, much of the gear they must utilize is mandated by federal regulation. *See* 29 C.F.R. § 1910.132; 30 C.F.R. § 56, *et seq*.

55. But, like Gonzales, the other Hourly Employees are regularly forced to perform this integral, indispensable, and compensable work on Asarco's premises, "off the clock," and without compensation before their shifts.

56. And, just as with Gonzales, these job duties take the other Hourly Employees approximately 30 to 40 minutes to complete each workday, "off the clock" and without compensation.

57. Additionally, under its rounding policy, Asarco recorded Gonzales and the other Hourly Employees as working their prescheduled shifts, even when they worked more.

58. Asarco rounded Gonzales's and the other Hourly Employees' hours for its own primary benefit and to their detriment.

59. Asarco fails to exercise its duty as the Hourly Employees' employer to ensure they are not performing work "off the clock," on its premises that Asarco does not want performed.

60. And Asarco knows, should know, or recklessly disregards whether Gonzales and the other Hourly Employees routinely perform compensable work "off the clock," and without compensation, before and after their scheduled shifts.

61. Thus, Asarco requests, suffers, or permits Gonzales and the other Hourly Employees to perform compensable work "off the clock," without compensation for Asarco's primary benefit.

62. Despite accepting the benefits, Asarco does not pay Gonzales and the other Hourly Employees for the compensable work they perform "off the clock."

63. Thus, under Asarco's off the clock policy and rounding policy, Gonzales and the other Hourly Employees are denied overtime wages for compensable work they perform "off the clock" during workweeks in which they work more than 40 hours.

64. And throughout their employment, Asarco has not paid Gonzales and the other Hourly Employees at the required premium overtime rates for all overtime hours.

65. Instead, Asarco pays Gonzales and the other Hourly Employees under its bonus pay scheme.

66. Specifically, Asarco agrees to pay and subsequently pays Gonzales and the other Hourly Employees non-discretionary bonuses, including production, attendance, and referral bonuses, based on criteria Asarco sets, including regular attendance, mine productivity, and copper price.

67. But Asarco excludes these non-discretionary bonuses from their regular rates of pay for overtime purposes.

68. For example, Asarco paid Gonzales a non-discretionary "copper bonus" on a quarterly basis but excluded this bonus from his regular rate of pay for overtime purposes during workweeks he worked over 40 hours during such quarters.

69. Thus, under Asarco's bonus pay scheme, it does not pay Gonzales and the other Hourly Employees overtime wages at the required rates—based on all remuneration—for all hours they work in excess of 40 in a workweek.

70. The Hourly Employees are thus subject to the same or similar unlawful policies—Asarco's off the clock policy, rounding policy, and bonus pay scheme—resulting in underpaid wages, in violation of the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

71. Gonzales brings his claims as a collective action on behalf of himself and the other Hourly Employees.

72. Like Gonzales, the other Hourly Employees are victimized by Asarco's off the clock policy, rounding policy, and bonus pay scheme.

73. Other Hourly Employees worked with Gonzales and indicated they were paid in the same manner, performed similar work, and were subject to Asarco's same off the clock policy, rounding policy, and bonus pay scheme.

74. Based on his experience with Asarco, Gonzales is aware that Asarco's off the clock policy, rounding policy, and bonus pay scheme were imposed on other Hourly Employees.

75. The Hourly Employees are similarly situated in the most relevant respects.

76. Even if their precise job duties and locations might vary, these differences do not matter for the purpose of determining their entitlement to overtime wages at the required premium rates for all overtime hours worked.

77. Therefore, the specific job titles or locations of the Hourly Employees do not prevent collective treatment.

78. Rather, Asarco's off the clock policy, rounding policy, and bonus pay scheme render Gonzales and the other Hourly Employees similarly situated for the purpose of determining their right to overtime wages at the required rates for all overtime hours worked.

79. Asarco's records reflect the number of "on the clock" hours the Hourly Employees were recorded as working each week.

80. Asarco's records also show it paid the Hourly Employees non-discretionary bonuses it excluded from their regular rates of pay.

81. The back wages owed to Gonzales and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

82. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Asarco's records and there is no detraction from the common nucleus of liability facts.

83. Therefore, the issue of damages does not preclude collective treatment.

84. Gonzales's experiences are typical of the experiences of the other Hourly Employees.

85. Gonzales has no interest contrary to, or in conflict with, the other Hourly Employees that would prevent collective treatment.

86. Like each Hourly Employee, Gonzales has an interest in obtaining the unpaid wages owed under federal law.

87. Gonzales and his counsel will fairly and adequately protect the interests of the Hourly Employees.

88. Gonzales retained counsel with significant experience in handling complex collective action litigation.

89. Absent this collective action, many Hourly Employees will not obtain redress for their injuries, and Asarco will reap the unjust benefits of violating the FLSA.

90. Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

91. Indeed, the multiplicity of actions would create hardship to the Hourly Employees, the Court, and Asarco.

92. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

93. The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual members.

94. Among the common questions of law and fact are:

a. Whether Asarco imposed its off the clock policy on the Hourly Employees;

b. Whether Asarco's off the clock policy deprived the Hourly Employees of overtime compensation for all overtime hours worked;

c. Whether Asarco rounded the Hourly Employees hours for its own primary benefit;

d. Whether Asarco paid the Hourly Employees non-discretionary bonuses;

e. Whether Asarco engaged in a policy or practice of excluding non-discretionary bonuses from the Hourly Employees' regular rates of pay for overtime purposes;

f. Whether Asarco failed to pay the Hourly Employees overtime wages at the required premium rates—based on all remuneration—for all overtime hours worked;

g. Whether Asarco's decision not to pay the Hourly Employees overtime wages at the required rates—based on all remuneration—for all overtime hours worked was made in good faith; and

h. Whether Asarco's violations were willful.

95. As part of its regular business practices, Asarco intentionally, willfully, and repeatedly violated the FLSA with respect to Gonzales and the other Hourly Employees.

96. There are many similarly situated Hourly Employees who have been denied overtime pay at the required rates—based on all remuneration—for all overtime hours worked, in violation of the FLSA, who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

97. The Hourly Employees are known to Asarco, are readily identifiable, and can be located through Asarco's business and personnel records.

## ASARCO'S VIOLATIONS WERE WILLFUL

98. Asarco knew it employed the Hourly Employees.

99. Asarco knew it was subject to the FLSA's overtime provisions.

100. Asarco knew the Hourly Employees were its non-exempt employees entitled to overtime wages.

101. Asarco knew the FLSA required it to pay non-exempt employees, including the Hourly Employees, overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for all hours worked after 40 a workweek.

102. Asarco knew Gonzales and each Hourly Employee worked more than 40 hours in at least one workweek during the last 3 years because Asarco recorded their "on the clock" hours via its timekeeping system.

103. Asarco knew it paid the Hourly Employees according to its off the clock policy.

104. Asarco knew it had a duty to ensure the Hourly Employees were not performing compensable work "off the clock" (without pay).

105. Asarco knew it required the Hourly Employees to don safety gear and participate in meetings "off the clock."

106. Asarco controlled the Hourly Employees' work procedures.

107. Asarco knew the Hourly Employees' mandatory "off the clock" work was a fundamental requirement of their jobs with Asarco.

108. Asarco knew the Hourly Employees' mandatory "off the clock" work was an integral and indispensable requirement of their jobs with Asarco.

109. Asarco knew the Hourly Employees routinely performed this daily, required "off the clock" work for Asarco's predominant benefit.

110. Asarco knew it rounded the Hourly Employees' hours for its own primary benefit.

111. In other words, Asarco knew the Hourly Employees performed compensable work "off the clock" and without compensation.

112. Asarco knew it paid the Hourly Employees non-discretionary bonuses.

113. Asarco knew these non-discretionary bonuses were not included in Gonzales's and the other Hourly Employees' regular rates of pay for overtime purposes.

114. And Asarco knew the FLSA required it to pay Gonzales and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek.

115. Asarco knew Gonzales and the other Hourly Employees regularly worked in excess of 40 hours a workweek.

116. Thus, Asarco knew, should have known, or recklessly disregarded whether it failed to pay Gonzales and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all the hours they worked in excess of 40 a workweek.

117. Asarco's failure to pay Gonzales and the other Hourly Employees overtime at the required rate—based on all remuneration—for all overtime hours worked was neither reasonable, nor was this shared decision made in good faith.

118. Asarco knowingly, willfully, and/or in reckless disregard of the FLSA carried out its unlawful bonus pay scheme and pre/post shift off the clock policy that deprived Gonzales and the other Hourly Employees of overtime wages at the required rate of pay—based on all remuneration—for all hours worked after 40 a workweek.

## COUNT I
## FAILURE TO PAY OVERTIME UNDER THE FLSA
## (FLSA COLLECTIVE)

119. Gonzales brings his FLSA claim as a collective action on behalf of himself and the other Hourly Employees pursuant to 29 U.S.C. § 216(b).

120. Asarco violated, and is violating, the FLSA by employing non-exempt employees, such as the Hourly Employees, in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their

regular rates of pay—based on all remuneration—for the hours they worked in excess of 40 a workweek.

121. Asarco's unlawful conduct harmed the Hourly Employees by depriving them of the overtime wages they are owed.

122. Accordingly, Asarco owes the Hourly Employees the difference between the wages actually paid and the overtime wages actually earned.

123. Because Asarco knew, or showed reckless disregard for whether its conduct violated the FLSA, Asarco owes the Hourly Employees these wages for at least the past 3 years.

124. Asarco is also liable to the Hourly Employees for an amount equal to all their unpaid overtime wages as liquidated damages.

125. Finally, the Hourly Employees are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## JURY DEMAND

126. Gonzales demands a trial by jury.

## RELIEF SOUGHT

WHEREFORE, Gonzales, individually and on behalf of the other Hourly Employees, seeks the following relief:

a. An Order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) be sent to the Hourly Employees allowing them to join this action by filing a written notice of consent;

b. An Order finding Asarco liable to Gonzales and the other Hourly Employees for unpaid overtime wages owed under the FLSA, plus liquidated damages in an amount equal to their unpaid wages;

c. A Judgment against Asarco awarding the Hourly Employees all their unpaid wages, including overtime wages, liquidated damages, statutory damages, and any other penalties available under the FLSA;

d. An Order awarding attorney's fees, costs, and expenses to the Hourly Employees;

e. Pre- and post-judgment interest at the highest applicable rates; and

f. Such other and further relief as may be necessary and appropriate.

Dated: December 2, 2025

Respectfully submitted,

**RANDALL LAW PLLC**

By: */s/ Samuel R. Randall* ________
Samuel R. Randall (No. 024517)
4742 North 24th Street, Suite 300
Phoenix, Arizona 85016
602-328-0262 – Telephone
602-926-1479 – Facsimile
srandall@randallslaw.com

Michael A. Josephson*
Andrew W. Dunlap*
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
rburch@brucknerburch.com

**Pro hac vice applications forthcoming*

**ATTORNEYS FOR GONZALES & THE HOURLY EMPLOYEES**